This case comes to you on a grant of a motion to dismiss, where a district court is expected to presume all the facts in the complaint are true. Unfortunately that did not happen here. The lower court below, faced with a factual dispute over whether a state court judge intended a dispositive ruling regarding Mr. Wright's ownership interest in nearly 400 pieces of very rare, many historically significant, and extremely valuable firearms, improperly weighed the evidence, rejected Mr. Wright's factual pleadings, and granted the city's motion to dismiss. For that reason, the court should reverse. Setting aside the court's improper factual analysis, the court's res judicata analysis necessarily must fail for at least one reason. Res judicata requires the first proceeding to have resulted in a final judgment on the merits. Here, case law, the party's own conduct, as well as these proceedings and related proceedings are crystal clear. No proceeding resulted in a final judgment as to Mr. Wright's ownership of the disputed firearms. Can I ask a question? I understand your position about the 2011 order. All right. Then you have the 2013 order, right? Now, I understand that you were noticed for that order, and that may be the whole answer. But it at least says that no, that items that have been identified as belonging to the defendant have been returned. No evidence of ownership by the defendant has been received. The time to appeal has long since passed. So it ñ now, I understand that you say that there was evidence of ownership, and I understand that you didn't have notice of this. And so is that why this is not preclusive, even if the other one wasn't? I think that's just right, Your Honor. The 2013 order ñ The briefs didn't address that at all. I'm sorry? The briefs didn't address the 2013 order at all. I think that's right. Whichever was correct and correctly and procedurally correct would itself be preclusive. It's not entirely clear ñ I think that it could have been appealed had Mr. Wright been given ñ excuse me ñ notice of the judgment at all. He didn't learn about it until well after the time for appeals in California had expired. It's very possible that that would have become a final judgment. However, there would still be a challenge here because Mr. Wright had never ñ actually, I guess it wouldn't be preclusive under res judicata because it wouldn't have been actually litigated since Mr. Wright never appeared and never got to challenge what the ñ excuse me ñ the city was saying in the application to the state court judge in Los Angeles. That is to suggest no evidence of ownership had been given since 2011 or that no firearms had been returned. Because ñ excuse me ñ getting back to what actually happened and what Mr. Wright is alleging in his complaint is that the city worked with Mr. Wright and Mr. Wright cooperated with the city for years from 2000 ñ excuse me ñ after the 2011 order all the way through to the end of 2013, 14, and then receiving a firearm back in 2015. He was working with the city to have those firearms returned. The city was consistently providing assurances ñ excuse me ñ that they were, quote, unquote, working through his proofs of ownership and that the additional firearms releases, the some 56 firearms releases, and 12 other gun part releases were made to him because the city recognized that those proofs of ownership that they were, quote, unquote, working through were to be observed in his favor. I think it's hard to believe the LAPD would release firearms to a man they publicly called a gun trafficker if they believed a court order in 2011 said that he didn't own the firearms. They were literally returning to his possession. Of course it does because the 2011 order never intended to be a final order regarding the ownership. That's your allegation, and I gather that it hasn't been factually disputed as such. Yes. Thank you. Is that right? That's correct. Mr. Wright has put in his complaint he pled that there was what the 2011 order meant, what the judge did in 2011. He actually presented into the record a signed declaration from an attorney, from his attorney explaining what happened at that 2011 hearing. And for the city's part, it's silence. All we have is we refuse to talk about what happened at that hearing. Am I correct that after the 2011 ruling that there were ongoing discussions and that the city returned some additional guns? Is that correct? That is very correct, Your Honor. Emails, telephone communications, letters notifying Mr. Wright that he could pick up his firearms, that they were ready for release, and dozens of firearms were in fact released to him, firearms that were not part of the 26 named by, identified specifically in the 2006 order. You say, does the complaint say dozens? I know there was one, but where's the dozens from? I think that it's, I'm not sure that the complaint says it. I believe Mr. Solvoso's declaration in support of the indicative ruling motion is more clear that there were more. But when it comes down to it, this is a factual question that we can provide evidence for if we get beyond the pleading stage. When we're at the pleading stage and we're making these factual tit-for-tat, it's not proper. We don't, I mean, and if we had to, it could have been amended to say that, to be very clear that 56 firearms were returned to him. So it wasn't until 2015, in response to this litigation, that the city claimed that this was a final order regarding his ownership of all the firearms. It's clear that nothing about the 2011 order did that, and race judicata cannot bar Mr. Wright's claims. In state court, how do we know whether this was a final order or wasn't a final order? If it were a final order, I mean, if this were federal court and it said final order, then the implication would be pretty compelling, wouldn't it, i.e., the fact that if he only said you get 26 back, you're not getting back the rest. Your whole premise has to be that it was not a final order. And how do we know that? From California case law, Your Honor. Excuse me. It's settled in California that property return motions determine the right of actual present possession of seized property. It is not race judicata. I'm asking a procedural question. Excuse me? I'm asking a procedural question. In other words, how does one know whether this was, as far as the judge was concerned, the end of this litigation or not? In federal court, you'd have to enter a final judgment. Right. Is this called a judgment? What is it called? It's just an order, as I understand it. In the criminal case, right? I'm sorry? It's in the criminal case. It was an order that happened after the criminal proceedings were closed. But it's part of the criminal case, isn't it? No, it's separate and apart. It's a separate proceeding? It's a special proceeding under California law. It's a special proceeding. If the criminal judgment has already been decided and done, if the court is still holding on to property, excuse me, you have a special proceeding for a property return motion. And as Mr. Wright established in the request for judicial notice recently filed, a request for a property return motion denial is not an order that is appealable. The court in the California Court of Appeal recently dismissed Mr. Wright's attempt to appeal such an order, saying that it wasn't a final appealable order. Well, if it's not appealable, isn't it then, by definition, not race judicata of any kind? That would be correct. But you never made that point, really. I think that our papers tried to make that point, but it wasn't entirely clear until we got expressed direction from the California Court of Appeal that Mr. Wright could not appeal it. We also got direction from the California Court of Appeal that a writ of mandate wouldn't have worked either because it's just this weird little loophole for proceedings that happen after a criminal case is done. You can't do a writ of mandate either, apparently, because there are other legal remedies available, going into civil court and asking for conversion or a trespass to chattels or a 1983 action, which is what we're trying to do here. So in closing, I'd like to just remind the court that immediately after the 2011 order was issued and for years following, the city acted, behaved as though they recognized only 26 firearms were disposed of by that 2011 order, and that they were under a continuing obligation to negotiate the return of the remaining property. It wasn't until 2015, in response to this litigation, that they changed their tune. We beg the court to take this case back down, allow Mr. Wright to plead his case, and have the city answer the factual allegations. Thank you. Thank you. Good morning. May it please the court. I'm Deputy City Attorney Eric Brown, and I represent the respondents. To get to the question of whether or not this was a final appealable order, Cal Penal Code Section 1237 makes appealable any denial of a motion for return of property because it makes appealable any ruling after judgment in a criminal case that affects substantial rights. She's saying this is not actually in the criminal case. Well, the motion for return of property was a motion after judgment in the criminal case that affected substantial rights. Not as a separate proceeding. I don't believe it was a separate proceeding. That's the city's position. Right. However, the complaint essentially says what she says it says, and then they came in with, and I don't know why we need to get to the declarations and so on. So why isn't she right? That there's at least a dispute or an ambiguity about what this order was. Well, why is she not right? You never really said why she's not right. You just keep saying it's clear, but it's not so clear. I mean, all he did was rule on that 26. He got 26 guns back, but you'd think if the ruling was supposed to be you don't get anything else back, it would say you don't get anything else back, and it doesn't say that. I've got a metaphor. I'm sorry? I've got a metaphor that I think of when I think of this case, and that is if you are driving with your two teenagers in the backseat of your car and you come to a fork in the road and the teenager on the right says go right and the teenager on the left says go left, and you go right, the teenager on the left says, well, just because you went right doesn't necessarily mean you go left. Well, left and right are mutually exclusive, but getting 26 guns and what happens to the rest of them is not mutually exclusive. They're not mutually exclusive. I mean, you can either get to 26 guns and we'll worry about the others later, or you can have a determination at the same time that you're not getting them back. In theory, that's true, but what actually happened here was a request for all 400. Okay. The LAPD comes in and says, no, don't give them the 400. Okay. Give them the 26. All right, and they have a complaint and they also have a declaration that says what actually happened was he said give them the 26 and we'll worry about the rest of them later, and they have some evidence that they allege that that actually happened, and now they're telling us that 56 more guns were actually returned. They have a self-serving declaration from their own attorney. What is a self-serving declaration? It's a declaration. Any declaration is self-serving. It says what you think, what you would believe happened. What's self-serving about it? Understood, Your Honor. People say it all the time, and I find it very irritating. There was a way to create a record here. They didn't try any of those methods to create the record. They didn't try to get to the right thing. It had a complaint, and they were dismissed from the complaint before they got to do anything, but the complaint does say this. The original complaint did not say this. The original complaint did not talk about the hearings in the criminal court at all, as if there were a dialogue on the premise that you were an OIPD. Well, the operative complaint. The operative complaint, I don't believe it's anywhere near as clear as that statement. Those clarifications are what the plaintiff would call clarifications came later, mainly in the anti-SLAPP proceeding. Some of the evidence from the anti-SLAPP proceeding was then used in the motion for indicative ruling. And in responding to the motion for indicative ruling, Judge Reel didn't say, you're too late, you should have done it earlier. He said, I don't care, this is an absolutely clear order, but it isn't. Or is it? To my reading, it's clear. Understanding implied findings, understanding what the criminal court was asked to rule upon it and seeing what the LAPD responded and then what the court did rule, it seems clear to me. Well, it's clear with respect to the 26 guns that were explicitly discussed, but it's not clear with respect to anything else. Well, let me posit this. If the plaintiff had asked for 400 guns, as he did, and the LAPD said return nothing to him, and then the order was no guns shall be returned, it would be clear that the court had considered the request from the plaintiff and had ordered no guns returned. Yeah, but that's a different request and a different order. Well, the request is the same in both scenarios. It's 400, and the order is simply changing the number that goes back. And if it's zero, we would find it to be clear, a clear rejection of the request, but it's 26. Is there any way to tell from the form of the order or the way it's entered or anything else whether it was what we would call a final judgment or something like it? Or is it just an order in a case? Other than the operation of law because of the penal code section, on the face of the order, it does say I've considered the motion, I've considered the opposition, I've considered the reply and the argument of counsel, and here's my ruling. The other thing we know about this is that you guys drafted the order. Yes, and sent it to the other side for their review. And they didn't think it was a problem, they say, because they thought it implicitly left open the rest of them. You referred to penal code section 1237, but there's the Court of Appeal California issued an order recently that was submitted in this case that says an order denying a motion for return of property following entry of judgment in a criminal action is not among the matters for which an appeal is permitted under penal code section 1237. I'm not sure why they would say that. They cite People v. Hopkins. That was the order that was issued recently on June 17th in this matter. Yes, I'm not sure why the court believes that case trumps the plain language of the statute which makes a ruling after entry of judgment appealable, but that is what it is. Mr. Wright didn't have to agree to the terms of his probation. He did agree to those terms. He could have done the time instead. What's the relevance of that? The relevance of that is one of the terms of the probation is you can't get the guns back until you provide proof of ownership. Okay. He's never provided proof of ownership. Well, he alleges, or says he can allege, I don't know if it's in the complaint, that he actually got back 56 more guns. If that's true. Well, right. If it's true, that's why we have pleadings and then we have factual submissions, but we haven't gotten to stage two. Well, there was nothing from the city that said you have an infinite amount of time to present proof of ownership to us. Well, he also alleges that the city kept saying, we're looking at it, we're looking at it, we're looking at it. Which isn't a representation that, you know, don't do anything, don't follow up on any other rights. Did the city continue to discuss this issue with him after the order in 2011? I don't know. I did not check factually on those things. Aren't you supposed to know that when you come to court? Well, there are declarations from Mr. Wright's side that say that that occurred, but that was not the city's position or its defense at the pleading stage. It wasn't the city's position? I thought the city just never entered any factual statements at all. Right. The factual statements that were discussed in the anti-SLAPP motion did not have to do with that area, which is why I don't know the answer to that question. Do you know if any additional guns were returned? I believe some, other than the 26 that were ordered returned, I don't know. Who's SLAPP motion was it, the city's? The city. The city gets to make a SLAPP motion? Yes. Why? Do you have First Amendment rights? Yes. Of course you don't. The city doesn't have any First Amendment rights. Well, we won the motion. I'm sorry, what? We were successful on the anti-SLAPP motion. You were unsuccessful? We were successful in the state court. I see. So there were declarations introduced in the anti-SLAPP proceeding. Some of those were used in the motion for indicative ruling in the federal matter. It's not before us, but I don't understand how you have a SLAPP motion, but go ahead. Okay. Anything else? No, unless the court has any further questions. Thank you. You don't need, all right, we'll give you one minute. You don't need to take it if you don't want to. I just wanted to make one quick point, a few quick points, actually. First, to let you know that the anti-SLAPP order is on appeal, so we're not sure where that's going yet. 1, 2, 3, 7, that section being more general about sorts of criminal orders, I don't think it applies here, especially for the California Court of Appeal telling us that it doesn't, that you cannot appeal this sort of order. Again, it's not res judicata. Can you tell us what is in the complaint about whether there were other guns returned? I think the complaint isn't extraordinarily clear, and I apologize for the drafting of that, that which, the identities of which guns were returned. Where am I supposed to be looking for anything? What paragraph? Pages 20 through 22 of the complaint, I believe, is where we talk about post-2011 facts where the parties were working together on the negotiation of firearms being returned. If there's nothing else, thank you for your time. Okay, thank you very much. Thank you both for your argument. The case of Wright v. Beckett.
judges: Berzon, Watford, Linn